IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| | ) | 2: 09-cr-00274 |
| v. | ) | 2: 14-cv-00757 |
| | ) | |
| ADOLPH CAMPBELL, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Now pending before the Court is the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 90) filed by Defendant/Movant Adolph Campbell with a memorandum of law in support (ECF Nos. 90, 91). The government filed a response in opposition to the motion (ECF No. 94). Accordingly, the motion is ripe for disposition.

**I.      Factual and Procedural Background**

On September 15, 2009, a federal grand jury returned a one-count indictment that charged Campbell with conspiracy to distribute and possess with intent to distribute 500 grams of a mixture and substance containing cocaine, which is a schedule II controlled substance, in violation of 21 U.S.C. § 846 (ECF No. 1). On September 25, 2009, Campbell entered a plea of "not guilty" to the charge. After Campbell's initial plea, the case was protracted for nearly a year, as Campbell filed a number of requests for extensions of time to file pretrial motions (ECF Nos. 18, 20, 22, 24, 30, 32, 35, 36, 38, 40). Finally, on August 18, 2010, Campbell filed his pretrial motions, all of which were ruled upon in a Memorandum Order dated November 4, 2010 (ECF Nos. 42, 46).

Shortly thereafter, Campbell filed a motion requesting that the U.S. Probation Office prepare a pre-plea investigation report, and the Court granted said request (ECF No. 48, 50). On

1

January 11, 2011, the report was disclosed to the Court and to the parties, indicating that Campbell's criminal history appeared to qualify him as a career offender under § 4B1.1 of the sentencing guidelines (ECF No. 52).

On July 11, 2011, the government filed an information charging a prior offense pursuant to 21 U.S.C. § 851, in which it averred that Campbell was convicted on or about April 2, 1992, in the Court of Common Pleas of Allegheny County of the crime of possession with intent to deliver cocaine (ECF No. 63).

The next day, Campbell withdrew his plea of not guilty and entered a plea of guilty to the indictment. The plea was entered pursuant to a written plea agreement between Campbell and the government. Of particular relevance to this motion, under the plea agreement, Campbell agreed to waive both his right to take a direct appeal and his right to collaterally challenge his conviction or sentence through the filing of § 2255 motion. During the plea colloquy, the Court asked Campbell specific questions about this provision of the plea agreement and found that Campbell's appellate and § 2255 waivers were voluntary, knowing, and intelligent.

On October 3, 2011, the Probation Office disclosed its Presentence Investigation Report ("PSI") to the Court and to the parties (ECF No. 66). According to the PSI, after the application of the three-level reduction for acceptance of responsibility, Campbell's adjusted offense level was 23. Because Campbell had been found to be a career offender under U.S.S.G. § 4B1.1, however, his offense level was increased to 37. After re-applying the three-level reduction for acceptance of responsibility, the Probation Office determined that Campbell's total offense level was 34. His career-offender designation placed him in criminal history category VI. The advisory guideline range as calculated in the PSI was 262-to-327 months' imprisonment.

On November 22, 2011, the Court sentenced Campbell as a career offender to a term of

imprisonment of 262 months. Following sentencing, Campbell filed a direct appeal to the United States Court of Appeals for the Third Circuit. The government responded by filing a motion to summarily dismiss the appeal based on the appellate waiver contained in the plea agreement. On May 13, 2014, the Court of Appeals granted the government's motion and dismissed Campbell's appeal (ECF No. 89). The instant motion followed on June 13, 2014.

## II. Discussion

Campbell's § 2255 motion seeks relief from his conviction and sentence on several grounds. As a threshold matter, however, the Court must address the validity of Campbell's waiver of the right to collaterally attack his sentence.[1] Such a waiver is valid and enforceable, provided that it is entered into "knowingly and voluntarily" and its "enforcement does not work a miscarriage of justice." *U.S. v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citation omitted).[2]

### A. Knowing and Voluntary

In deciding whether a waiver was knowing and voluntary, the Court must look to the language of the plea agreement and the exchange between the Court and the defendant at the plea hearing. *Id.* (citing *U.S. v. Gwinnett*, 483 F.3d 200, 203-04 (3d Cir. 2007)). The waiver provision in this case is quite broad, applies to both direct appeal and collateral challenge rights, and

---

1. A district court has the authority to dismiss a motion to vacate without holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief. *See* 28 U.S.C. § 2255(b); Rule 4(b) of the Rules Governing § 2255 Proceedings. Such is the case here. Accordingly, the Court will resolve this motion without a hearing.

2. The Court recognizes that ethical concerns regarding the validity of waivers that prevent a defendant from raising claims of ineffective assistance of counsel in a § 2255 motion have recently been raised. *See U.S. v. Joseph*, No. 10-233, 2014 WL 2002280, at *1 (W.D. Pa. May 15, 2014) (discussing NACDL Ethics Advisory Committee Formal Opinion 12–02 (Oct. 2012) and PBA Legal Ethics and Professional Responsibility Committee Formal Opinion 2014–100). Although the Court of Appeals has acknowledged these concerns, it has continued to uphold § 2255 waivers and has deferred ruling on whether the potential ethical issues should cause it to rethink its longstanding practice of doing so. *See U.S. v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014).

contains only limited exceptions not implicated here. At the change-of-plea hearing, Campbell informed the Court that he read the plea agreement, reviewed it with his attorney, Mark Lancaster, and understood it. Tr. of Plea Hr'g at 22-23 (ECF No. 77). The Court then specifically asked Campbell whether he understood the provision in the plea agreement by which he waived his right to "file a motion to vacate sentence under 28, United States Code, Section 2255 and the right to file any other collateral proceeding attacking [his] sentence." *Id.* at 17. Campbell answered in the affirmative. *Id.* In light of the exchange during the plea colloquy, the Court is satisfied – just as it was at the hearing itself – that Campbell's waiver was knowing and voluntary. Campbell has not pointed to anything that would cause the Court to think otherwise. While he takes issue with the specificity with which the Court described the rights that he was giving up, the Court was not required to "define further or characterize 'collateral proceedings,' nor was it required to list the types of claims that [Campbell] would no longer be permitted to bring as a result of that waiver." *U.S. v. Delbridge*, 504 F. App'x 145, 150 (3d Cir. 2012) (citing *Mabry*, 536 F.3d at 239).

### B. Miscarriage of Justice

Because the wavier was made knowingly and voluntarily, it will be enforced so long as it does not work a miscarriage of justice. The miscarriage-of-justice exception is to be applied "'sparingly and without undue generosity.'" *U.S. v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *U.S. v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)). In considering whether it should be applied, the Court must consider "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Mabry*, 536 F.3d at 242–43 (quoting *Teeter*, 257 F.3d at

25-26). Because each of Campbell's grounds for relief lacks merit, he cannot establish that enforcing his knowing and voluntary waiver would result in a miscarriage of justice. *See Delbridge*, 504 F. App'x at 150.

First, Campbell makes several interrelated and conclusory claims of ineffective assistance of counsel during the plea process. Specifically, he alleges that before accepting the plea agreement, Attorney Lancaster informed him that his sentence would not exceed 10 years; he was never advised as to his sentencing exposure if he proceeded to trial instead of pleading guilty; he was not advised of the career offender enhancement; and Attorney Lancaster failed to negotiate a reasonable plea agreement and to properly communicate with him.

These claims are belied by a review of the record. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (explaining that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"). At the plea hearing, the Court expressly advised Campbell that he faced up to a minimum of 120 months imprisonment and a maximum of life imprisonment if he was pleading guilty to a "second or subsequent" offense – which he was, due to the government's § 851 filing. Tr. of Plea Hr'g at 12 (ECF No. 77). The Court also specifically asked Campbell whether he and Attorney Lancaster "discussed how the sentencing guidelines might apply in [his] case?" *Id.* at 14. Campbell responded, "Yes." *Id.* The following lengthy exchange then took place:

> THE COURT: Is that correct, Mr. Lancaster?
>
> MR. LANCASTER: It is, Your Honor. In fact, there was actually a pre-plea investigation done with respect to the offense conduct and the guidelines.
>
> THE COURT: The Court will not be able to determine the advisory guideline sentence for your case until after the presentence investigation report has been completed, as pointed out by Mr. Lancaster, and you and the

5

> Government have had an opportunity to challenge the reported facts and the potential application of the guidelines as recommended by the Probation Office. Also, the sentence imposed may be different from any estimate that your attorney may have given you.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Mr. Ivory, what's the Government's position as to the applicable guideline sentencing range?
>
> MR. IVORY: Your Honor, as Mr. Lancaster referenced, there was a pre-plea presentence report done in this case. It is the Government's position that Mr. Campbell's a career offender under Section 4B1.1 of the sentencing guidelines.
>
> I would also note, Your Honor, that the Government filed an 851 notice seeking enhanced penalties, so the minimum sentence in this case would be a term of imprisonment of 120 months – 120 months at the low end and it would be the career offender guideline.
>
> THE COURT: Mr. Lancaster, what's the Defendant's position as to the applicable sentencing guideline range?
>
> MR. LANCASTER: Your Honor, it's identical to the Government's.

*Id.*

As this exchange demonstrates, it was clear to Campbell by virtue of the pre-plea investigation report and the representations of the Court, his attorney, and the prosecutor during the plea colloquy, that the mandatory minimum sentence in his case would be 120 months, as a result of the filing of an § 851 notice, and that he would be sentenced under the career offender guidelines, which exposed him to a lengthier period of incarceration. He said as much under oath in open court, and he has done nothing to overcome the "strong presumption of verity" that attached to his declarations concerning the information made available to him about the consequences of his plea and the potentiality of a sentence that exceeded 10 years. *See Blackledge*, 431 U.S. at 74. Even if Attorney Lancaster did erroneously advise Campbell that he would face a maximum of 10 years' imprisonment, any such representation is ultimately

6

immaterial since "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." *Delbridge*, 504 F. App'x at 151 (citing *Shedrick*, 493 F.3d at 299; *U.S. v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003)).

Second, Campbell alleges that in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), his sentence was "illegally enhanced" by the application of U.S.S.G. § 4B1.1. Essentially, he is arguing that under *Alleyne*, the Court violated his Sixth Amendment rights because the offenses that triggered the career-offender enhancement were not charged in the indictment or expressly admitted as part of his plea agreement. The Third Circuit Court of Appeals has twice made clear, however, that the *Alleyne* Court did not announce a new rule of law that applies retroactively to cases on collateral review. *See U.S. v. Reyes*, --- F.3d ---, 2014 WL 2747216, at *1-2 (3d Cir. Jun 18, 2014); *U.S. v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014). Therefore, Campbell cannot raise this claim in a § 2255 motion. Even if *Alleyne* were applicable to cases on collateral review, the result here would be the same: "[s]tated simply, *Alleyne* does nothing to alter the rule that, for sentencing enhancement purposes, the fact of a prior conviction need not be submitted to a jury." *Shaw v. U.S.*, No. 10-cr-00204, 2014 WL 2719661, at *3 (M.D. Pa. June 13, 2014) (citing *U.S. v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *U.S. v. Wright*, No. 05–619–1, 2013 WL 5707876, at *4 n.22 (E.D. Pa. Oct. 18, 2013)); *see also Almendarez-Torres v. U.S.*, 523 U.S. 224, 239–40 (1998).

Third, Campbell claims that Attorney Lancaster was ineffective for failing to review, explain, and discuss the PSI with him; failing to argue substantive objections to the PSI at sentencing; and failing to argue for mitigation on his behalf. Just like Campbell's other arguments, these allegations are also wholly unsubstantiated and lacking in merit. As already discussed, it was clear to Campbell even before the plea hearing that he would be subject to the

career-offender enhancement. The PSI merely reiterated what was already known to him. So even assuming that Attorney Lancaster did not review, explain, or discuss the PSI with him – a contention which is in fact contradicted by the transcript of the sentencing hearing, where Campbell was specifically asked about whether he reviewed the PSI and answered affirmatively – it would be impossible for Campbell to establish that he was prejudiced by such failure. Furthermore, although Campbell claims that Attorney Lancaster was ineffective because he did not raise any objections to the PSI, he has not pointed to any specific portions of the PSI that were objectionable. Insofar as he is arguing that an objection should have been raised to the application of the career-offender enhancement on Sixth Amendment grounds, this argument is misplaced for the reasons already discussed. The prior offenses did not have be alleged in the indictment and submitted to a jury, so an objection on that ground would have been futile. Finally, Campbell's claim that Attorney Lancaster failed to argue mitigating factors is contradicted by Campbell's own memorandum of law, in which he states that

> his attorney offered *meaningful arguments* in support of a request for a variance from the Guideline range, in consideration of the 18 U.S.C. § 3553(a) sentencing factors. The sentencing transcript evidences that counsel requested the Court to consider the positive contributions that he had made to the community and to his family. Disappointingly, the *thoughtful arguments of counsel* did not affect the Court's decision.

Def.'s Br. at 10 (ECF No. 91) (emphasis added).

### III. Conclusion

In sum, Campbell's waiver of his right to file a § 2255 motion was knowing and voluntary and its enforcement will not lead to a miscarriage of justice. In accordance with the foregoing, his MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 90) will be **DENIED** and Civil Action No. 14-757 will be docketed as **CLOSED**. Furthermore, a certificate of

appealability pursuant to 28 U.S.C. § 2253 will not be issued because Campbell has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| | ) | 2: 09-cr-00274 |
| v. | ) | 2: 14-cv-00757 |
| | ) | |
| ADOLPH CAMPBELL | ) | |

## ORDER OF COURT

**AND NOW**, this 8th day of August, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 90) filed by Adolph Campbell is **DENIED** and no certificate of appealability shall issue because Campbell has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). It is **FURTHER ORDERED** that Civil Action No. 14-757 shall be docketed as **CLOSED**.

BY THE COURT;

s/ Terrence F. McVerry
Senior United States District Judge

cc: Michael Leo Ivory, AUSA
Email: michael.ivory@usdoj.gov

Adolph Campbell
USMS 30491-068
P.O. Box 725
Edgefield, SC 29824
PRO SE